O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| RIGOBERTO PEREZ | ) | Case No. CV 09-4600-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

Plaintiff Rigoberto Perez seeks judicial review of the Commissioner's final decision denying his application for Social Security disability benefits. For the reasons stated below, the decision of the Social Security Commissioner is reversed, and the matter is remanded for further proceedings.

**I.    Facts and Procedural History.**

On February 9, 2005, Plaintiff filed an application for Social Security disability insurance benefits, alleging that he became disabled and unable to work on April 1, 2003. (Administrative Record ["AR"] at

18, 59.)  Plaintiff's application was denied initially on July 7, 2005, and again upon reconsideration on September 28, 2005.  (AR at 18, 43-56.)

Plaintiff was born on June 10, 1977, and was 27 years old at the time of the application was filed. He has a high school education and is able to communicate in English.  (AR at 24, 71.)  Plaintiff had worked as a car mechanic at a Toyota dealership. Plaintiff claims that he was injured at work, and he has not worked since his disability onset date. (AR at 24, 76, 149-50, 164-66.)

On August 15, 2008, plaintiff, his attorney, a vocational expert ("VE"), and a non-examining medical expert, clinical psychologist Dr. David Glassmire, appeared at a hearing before Administrative Law Judge ("ALJ") Thomas J. Gaye.  (AR at 659-686.)  Plaintiff's attorney stated at the hearing that Plaintiff still had a California state workers' compensation case pending regarding his past work at Toyota. (AR at 685.)

On September 12, 2008, the ALJ issued his decision, finding that plaintiff was not disabled within the meaning of the Social Security Act.  (*See* AR at 15-25.)  The ALJ found that plaintiff suffered from the following severe impairments: (1) mild lumbar degenerative disc disease, (2) lumbar spondylosis, (3) right shoulder impingement, (4) obesity, (5) diabetes mellitus, (6) migraine headaches, (7) a psychotic disorder, *i.e.*, schizophrenia, (8) a depressive disorder, and (9) an obsessive compulsive personality disorder ("OCD").  (AR at 20.)  Nevertheless, the ALJ found that while Plaintiff could not perform "the full range of light work" as defined in 20 C.F.R. § 404.1567(b), Plaintiff retained the residual functional capacity ("RFC") to perform light work with restrictions to "occasional overhead reaching on the right and

2

occasional postural restrictions, simple repetitive tasks with no contact with the public and only occasional nonintense contact with others, [and] no tasks requiring hypervigilence." (AR at 21, 25.) In light of the RFC and these restrictions, the ALJ found that plaintiff was unable to perform his past relevant work; but the ALJ found, based on the VE's testimony, that plaintiff could nonetheless perform work as an electrical assembler, a hand packager, or a packing machine operator. (AR at 25.)

Plaintiff filed a Request for Review of the ALJ's decision with the Social Security Appeals Council, and on January 12, 2009, that request was denied. (AR at 4-8.)

The parties filed a Joint Stipulation ("JS") of disputed issues on February 18, 2010. Plaintiff contends that: (1) the ALJ did not properly determine Plaintiff's RFC and ability to sustain work activity; (2) the ALJ did not properly evaluate Plaintiff's combined impairments; (3) the ALJ did not properly consider Plaintiff's testimony at the hearing; and (4) the ALJ improperly relied on the VE's testimony at the hearing. (JS at 8.) Plaintiff requests reversal of the ALJ's decision and an immediate award of benefits. (JS at 39-40.) The Commissioner requests that the ALJ's decision be affirmed. (JS at 41.) The Joint Stipulation of the parties has been taken under submission without oral argument.


**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Social Security Commissioner's decision to deny benefits. The Commissioner's decision must be upheld unless "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a

3

whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996).  "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute its judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

## III.  **Discussion**

### A.  **Issues Nos. 1, 2 and 3: ALJ's Consideration of Combined Impairments and Plaintiff's Testimony in Assessing RFC.**

Since the first three issues raised by Plaintiff all concern the ALJ's assessment of Plaintiff's RFC, this Court will consider those three issues together.

Plaintiff argues that he has physical impairments which render him unable to sit, stand, or walk for prolonged periods of time; he is unable to sustain activity with his arms extended in front of him or overhead; and he has limitations from a broken right ankle suffered in childhood.  (JS at 9)  Plaintiff argues that Dr. Anh Tat Hoang, his treating workers' compensation doctor, restricted Plaintiff to lifting no more than 10 pounds and to limited twisting, turning, and torquing;

4

and Plaintiff argues that, if these restrictions are credited, Plaintiff would only be able to do sedentary work. (JS at 17, citing AR at 163-79.)

Plaintiff also complains that the severe mental impairments that were recognized by the ALJ, together with other mental and non-exertional impairments and pain, combine to render Plaintiff disabled. Plaintiff notes that he experiences hallucinations from schizophrenia; his depression is disabling; and his OCD sometimes compels him to check windows and doors and count the letters in words. (JS at 9.) Plaintiff also claims that his diabetes is uncontrolled, and he suffers from allergies and has difficulty breathing. (JS at 9.)

Plaintiff argues that he has chronic pain from various impairments. (JS at 9.) Plaintiff states that he has neuropathy in his extremities; and he suffers from chronic, sometimes daily migraine headaches. (JS at 9.) Plaintiff states that he has been on many medications for pain control, including Methadone; and he argues that his various medications have side effects that were not considered by the ALJ. (JS at 9.)

### 1. Legal standards.

A claimant's RFC is what he is capable of doing despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2,

1996).[1]   An RFC assessment is ultimately an administrative finding reserved to the Commissioner, based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, as well as observations by family members and the claimant's own subjective symptoms.   20 C.F.R. § 404.1545(a)(3).   In assessing RFC, the ALJ must consider all allegations of physical and mental limitations or restrictions, even those that are not "severe," and consider the claimant's ability to meet physical, mental, sensory, and certain other requirements of work. *See* 20 C.F.R. §§ 404.1545(a)(2), (a)(4); SSR 96-8p.   An RFC that does not account for all of a claimant's limitations is defective. *Valentine*, 574 F.3d at 690.

In formulating a claimant's RFC, an ALJ is not required to include limitations that are not supported by substantial evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).   "Conversely, an ALJ is not free to disregard properly supported limitations." *Robbins*, 466 F.3d at 886.   An ALJ may omit limitations arising out of a claimant's subjective complaints only if the subjective complaints have been specifically discredited. *Compare Copeland v. Bowen*, 861 F.2d 536, 541 (9th Cir. 1988) (RFC excluding subjective pain limitations was supported by substantial evidence where ALJ specifically discredited claimant's pain testimony) *with Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective pain limitations was not supported by substantial evidence where ALJ did not provide clear and convincing reasons for discrediting

---

[1]   "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy . . . .   Although SSRs are not published in the federal register and do not have the force of law, [the Ninth Circuit] nevertheless give[s] deference to the Secretary's interpretation of its regulations." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc).

claimant's testimony).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician has a "greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). If a treating physician's opinion is contradicted by an examining professional's opinion, which is supported by different independent clinical findings, the Commissioner may resolve the conflict by relying on the latter. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Orn*, 495 F.3d at 632 (ALJ may reject opinion of treating physician in favor of examining physician whose opinion rests on independent clinical findings). However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. The opinion of a non-examining physician may serve as substantial evidence only when it is consistent with other independent evidence in the record. *Id.* at

7

830-31.

The determination of credibility and the resolution of conflicts in the testimony are functions of the ALJ. *Morgan v. Comm'r of Soc. Sec.,* 169 F.3d 595, 599 (9th Cir. 1999); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).  In general, an ALJ's assessment of credibility should be given great weight. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).  When analyzing a claimant's subjective symptoms of pain, the ALJ may consider factors relevant to the symptoms such as, *inter alia*, the claimant's daily activities; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment, other than medication, that the claimant receives or has received for relief of pain or other symptoms; or any other measures that the claimant has used to relieve pain or symptoms.  *See* 20 C.F.R. § 404.1529.  The ALJ may employ "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms, testimony that appears less than candid, or unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, in assessing a claimant's credibility.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted). However, once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony regarding subjective pain and other symptoms merely because the symptoms, as opposed to the impairments, are unsupported by objective medical evidence. *Lingenfelter,* 504 F.3d at 1035-36; *Reddick,* 157 F.3d at 722; *Light v. Soc. Sec. Admin.*, 119 F.3d at 792.  "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273,

8

1  1281 (9th Cir. 1996).)

2        **2.  Analysis.**

3        Plaintiff's multiple severe physical and mental impairments, as

4  noted by the ALJ, and Plaintiff's allegations of other impairments and

5  chronic pain, are not easily compartmentalized, nor are their effects

6  easily combined.  For purposes of this analysis, this Court will

7  consider the "physical," exertional aspects of Plaintiff's RFC first,

8  and then will consider the "mental," generally non-exertional aspects of

9  Plaintiff's RFC, including Plaintiff's allegations of pain, to determine

10  if the ALJ's overall assessment of Plaintiff's RFC is supported by

11  substantial evidence.

12        **a.  Physical Residual Functional Capacity:**

13              **shoulder, back, ankle, and other complaints.**

14        As noted, the ALJ found that Plaintiff retained the RFC to perform

15  light work with certain restrictions.  The Social Security regulations

16  divide the physical exertion requirements of work into five categories,

17  including "light work," which is defined as, *inter alia*, "lifting no

18  more than 20 pounds at a time with frequent lifting or carrying of

19  objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).  The

20  regulations define "sedentary work" as, *inter alia,* "lifting no more

21  than 10 pounds at a time and occasionally lifting or carrying articles

22  like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

23        On May 20, 2005, Dr. John Sedgh, an internal medicine expert,

24  performed a consultative internal medicine exam on Plaintiff at the

25  request of the Department of Social Services.  (*See* AR at 157-61.)

26  Dr. Sedgh found, *inter alia*, that Plaintiff had 30 pounds of grip

27  strength force with his right hand and 40 pounds with the left hand;

28  limited range of motion in his back; normal range of motion in his right

9

shoulder, with motor strength rated at 4 out of 5; and a limited range of motion in the right ankle in regard to a "right ankle fracture[]." (AR at 161.)  Based on his firsthand testing and observation, Dr. Sedgh found that Plaintiff can lift and carry 50 pounds occasionally and 25 pounds frequently; can stand and walk for 6 hours in an 8-hour day with normal breaks; and can sit for 6 hours in an 8-hour day.  (AR at 161.)  Dr. Sedgh opined that Plaintiff "may need a right ankle brace for prolonged walking," but he stated that Plaintiff "does not need any type of cane."  (AR at 161.)  A subsequent "Physical Residual Functional Capacity Assessment" ("PRFCA"), based on Dr. Sedgh's records, that was performed by a state consultative examiner on June 21, 2005 generally confirmed these findings, noting, in particular, that Plaintiff had a normal range of motion in his right shoulder.  (*See* AR 200-09.)

On May 26, 2005, Dr. Hoang, the doctor who treated Plaintiff from at least October 21, 2003 until February 28, 2005 in connection with Plaintiff's workers' compensation claim, prepared a report which opined that: (1) based on an MRI, Plaintiff had a lumbosacral spine sprain/strain with bilateral radicular pain due to a 3 mm disc protrusion at L4-L5 and a 3 mm bulging disc and mild osteoarthritis at L5-S1; and (2) based on another MRI, Plaintiff had a mild subacromial impingement of the right shoulder.  (AR at 175.)  Dr. Hoang noted that a grip strength test showed Plaintiff with 25 pounds of grip strength force in his right hand, and scoring between 30 and 35 pounds of strength in his left hand.  (AR at 175.)  Regarding the right shoulder, Dr. Hoang noted that a "Hawkins impingement test was positive as is."[2]

_____

[2]  Plaintiff asserts that a "Hawkins impingement test" is a sign of pain produced by forced internal rotation of the humerus in 90° of abduction.  (JS at 17, n.8, citing Stedman's Medical Dictionary.)  This Court's own research indicates that the "Hawkins impingement test" is

(AR at 172.)   Regarding Plaintiff's subjective complaints, Dr. Hoang noted that Plaintiff complained his back pain was "constant, moderate, sharp and burning pain radiating to both knees accompanied by numbness of both feet," and that Plaintiff complained the pain increased to "greater than moderate with heavy lifting and repeated bending and stooping." (AR at 174.)   Dr. Hoang also noted that Plaintiff complained that his right shoulder pain was "constant, moderate, sharp and burning," and the pain "increased to greater than moderate when lifting greater than 10 pounds and work above shoulder level." (AR at 174.) Based on these factors, Dr. Hoang opined that Plaintiff had "[l]umbar spine disability precluding [Plaintiff] from heavy work," and "right major shoulder disability precluding [Plaintiff] from lifting greater than 10 pounds . . . [and] work above shoulder level, twisting, turning and torquing."[3]   (AR at 175.)   Dr. Hoang noted that Plaintiff should wear

also known as the "Hawkins-Kennedy test," and consists of "[f]orcefully internally rotat[ing] a 90° forwardly flexed arm, causing the supraspinatus tendon to impinge against the coracoacromial ligamentous arch."   *See* http://emedicine.medscape.com/article/92974-overview (as viewed on March 3, 2010).   "Pain and a grimacing facial expression indicate impingement of the supraspinatus tendon, indicating a positive [] Hawkins impingement sign."   *Id.*

[3]   Within the "Schedule for Rating Permanent Disabilities Under the Provisions of the Labor Code of the State of California" ("Ratings") that was in effect at the time of Dr. Hoang's May 26, 2005 report, there is apparently no definition of "heavy work" set forth.   The prior version of the Ratings that was in effect from April 1997 to January 1, 2005, under the headings "Spine and Torso Guidelines" and "Disability Precluding Heavy Work," stated that the "heavy work" designation "contemplates the individual has lost approximately 50% of pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort."   *Cf. Booth v. Barnhart,* 181 F. Supp. 2d 1099, 1104-05 (C. D. Cal. 2002) (California workers' compensation work classification guidelines are not based on strength; rather, they turn on whether a claimant sits, stands, or walks for most of the day; whereas Social Security disability exertional categories are differentiated by step increases in lifting capacities). *Cf. also Cervantes v. Astrue*, 2010 WL

11

a lumbar support for his back.  (AR at 175.)  Dr. Hoang also stated that "[e]ither authorization for surgery to the right major shoulder is given or the patient will be placed on permanent and stationary status with the above work restrictions."  (AR at 175.)[4]

As noted, the ALJ stated that he accorded "significant weight" to Dr. Hoang's May 2005 opinion; and the ALJ stated that he "disagrees with the state agency examiners that [Plaintiff] can perform medium work"; but the ALJ found that Plaintiff "is able to move about frequently and lift and carry up to 20 lbs occasionally, which is consistent with his childcare and home responsibilities."  (AR at 23-24.)  The ALJ also stated that "[b]ecause Plaintiff had MRI evidence of a right impingement in 2004, the [ALJ] concludes that [Plaintiff] is limited to occasional reaching overhead on that side," and limited to occasional postural restrictions due to his back condition.  (AR at 24.)

This Court's review of the record reveals that the ALJ permissibly modified Dr. Hoang's findings in light of the findings from Dr. Sedgh. A treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751 (citing *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Since the opinion of the treating physician, Dr. Hoang, that Plaintiff was limited to lifting 10 pounds, was contradicted by the independent findings of examining physician Dr.

749881, at *3 n.4  (C.D. Cal. 2010) (citing *Booth*).

[4]  In the terminology of California Worker's Compensation cases, the phrase "permanent and stationary" means that the claimant's disability "has reached maximum medical improvement or his or her condition has been stationary for a reasonable period of time."  *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1103-04 n.3 (C.D. Cal. 2002) (citations omitted); *Robertson v. Workers' Comp. Appeals Bd.*, 112 Cal. App. 4th 893, 897, 5 Cal. Rptr. 3d 485 (2003).

Sedgh that Plaintiff could occasionally lift up to 20 pounds, the ALJ could permissibly rely on Dr. Sedgh's findings. *See Andrews v. Shalala*, 53 F.3d at 1041; *Orn*, 495 F.3d at 632.

The ALJ also properly considered Plaintiff's credibility when he discounted Plaintiff's claim that he could not handle the physical demands of light work. The ALJ noted that Plaintiff's daily activities include caring for his infant toddler son. (AR at 23.) While the record does not explicitly state how much Plaintiff's son weighs, or how often each day Plaintiff picks his son up, it is reasonable to assume that Plaintiff's son weighs at least 10 pounds, and that Plaintiff picks up his son at least occasionally. Taken together with Dr. Sedgh's findings, the ALJ permissibly found that Plaintiff could occasionally lift up to 20 pounds based on these daily activities. *See* 20 C.F.R. § 404.1529; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may justify discrediting excess pain allegations). The ALJ also noted that the record does not reflect that Plaintiff has had any recent medical treatments, apart from medications, for his shoulder, and the ALJ found that this was evidence of remittance; and this is another factor which the ALJ may permissibly consider when assessing the credibility of Plaintiff's claimed shoulder limitation. *See* 20 C.F.R. § 404.1529.

The record also supports the implicit finding that Plaintiff's obesity, considered in combination with his other impairments, did not significantly limit Plaintiff's physical RFC. While the ALJ did not explicitly discuss the impact of Plaintiff's obesity on his physical RFC, the ALJ did note that the record reflected Plaintiff's "concerns" about his weight. (*See* AR at 22 [citing AR at 379].) However, this Court's review of the record as a whole does not point to evidence of

functional limitations due to obesity which would have impacted the ALJ's opinion, and Plaintiff does not point this Court to any such evidence either. Consequently, the ALJ did not commit reversible error by failing to explicitly discuss the impact of Plaintiff's obesity on Plaintiff's RFC. *See Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ also properly discounted Plaintiff's claims that his right ankle injury significantly limits his functioning, or that he needs to use a cane to stand and walk. The ALJ noted that Plaintiff's claimed need for a cane was inconsistent with Plaintiff's activities of daily living, which include caring for his toddler son. The ALJ also noted that, while Dr. Sedgh opined that Plaintiff "may need a right ankle brace for prolonged walking," Dr. Sedgh also stated that Plaintiff "does not need any type of cane." (AR at 22 [citing AR at 161].) The record also reflects that at various times Plaintiff has worn a supporting boot for his right ankle with apparent success. Based on these factors, the ALJ properly discounted the credibility of Plaintiff's claim that his ankle injury was significantly limiting or that Plaintiff required a cane. *See* 20 C.F.R. § 404.1529; *Tommasetti,* 533 F.3d at 1039.

Taken together, it must be found that the ALJ properly considered the combined effect of Plaintiff's impairments on the physical aspects of Plaintiff's RFC.

> **b.   Mental Residual Functional Capacity, including mental and non-exertional impairments and pain.**

More involved and problematic is the analysis of whether the ALJ properly considered Plaintiff's numerous severe mental impairments in combination with Plaintiff's other alleged non-severe impairments subjective complaints of pain in arriving at Plaintiff's RFC. As noted,

14

the ALJ found that Plaintiff had severe mental impairments including a psychotic disorder, a depressive disorder, OCD, and migraine headaches. Plaintiff also complains of chronic physical and mental pain, neuropathy, panic attacks, adverse reactions to stress, and an aversion to "go[ing] where there's a lot of people." Plaintiff takes several medications for control of his psychological symptoms and for pain, including Methadone. Plaintiff's diabetes mellitus may also be considered a non-exertional impairment. *See, e.g., Xiong v. Astrue*, 2009 WL 737030, at *6 (E.D. Cal. 2009) (diabetes has non-exertional symptoms); *Mitchell v. Astrue*, 2009 WL 542216, at *5 (C.D. Cal. 2009) (diabetes is non-exertional limitation) (Parada, M.J.). Plaintiff argues that the ALJ did not adequately consider his mental and non-exertional impairments, his pain symptoms, and the side effects of his medications in combination, and the ALJ improperly relied on Plaintiff's daily activities to find Plaintiff not disabled.

Apparently, neither a Psychiatric Review Technique form ("PRT") nor a Mental Residual Functional Capacity Assessment form ("MRFCA") were prepared in this case, as there is no evidence of any PRT or MRFCA in the record. The only assessment of Plaintiff's mental impairments on behalf of the Social Security Administration is the testimony of Dr. Glassmire, the non-examining clinical psychologist who appeared by telephone at the hearing as a medical expert. (AR at 663-66.) Dr. Glassmire testified that he reviewed all of Plaintiff's medical records, and he had no objection to admitting Exhibits 1 through 15F (*i.e.,* AR at 71-658) into the record. (AR at 663-64.) Dr. Glassmire testified that Plaintiff did not meet or equal any listed mental impairments (as set forth in the Listing of Impairments, 20 C.F.R. § 404, Subpt. P. App. 1 ("Listings")). (AR at 664-65.) He noted what

he termed Plaintiff's "most significant" mental impairment was a "12.06" OCD disorder (referring to "12.06 Anxiety Related Disorders" in the Listings).  (*See* AR at 665.)  He also stated that Plaintiff had a "12.03" psychotic disorder (referring to "12.03 Schizophrenic, Paranoid and Other Psychotic Disorders" in the Listings); and a "12.04" depressive disorder (referring to "12.04 Affective Disorders" in the Listings).  (AR at 665.)  He testified that Plaintiff's psychotic disorder, depressive disorder, and OCD would limit Plaintiff to "simple, repetitive tasks [], no contact with the public, only occasional nonintense contact with others, and no tasks requiring hypervigilence." (AR at 665.)  Plaintiff's counsel declined to cross-examine Dr. Glassmire at the hearing.  (AR at 665.)  Dr. Glassmire's assessment was performed, of course, without the benefit of personally examining Plaintiff, and Dr. Glassmire gave his opinions before Plaintiff testified at the hearing.

Among other things, Plaintiff testified at the hearing that he helped around the house before his work-related injury, but now "I really can't do much." (AR at 668.)  Plaintiff claims he drives "[o]nly when absolutely necessary, like for medical appointments or something." (AR at 668.)  Plaintiff testified that he has been diagnosed with "psychiatric conditions . . . [and] I really don't like to go anywhere where there's a lot of people . . . it makes me have panic attacks . . . among other things." (AR at 669.)  He testified that he takes Methadone for his back and shoulder pain, and he takes Cymbalta, Lorazepam, Cogentin, and Fluphenazine for his psychiatric conditions and

16

panic attacks.[5]  (AR at 669-70.)  He testified that "I don't really notice that they [*i.e.*, the prescriptions] help with anything," but he takes them "[b]ecause I have to follow the doctor's orders."  (AR at 670.)  Plaintiff also testified that "I feel like the devil's following me," and he said "my mind's always racing and I can't concentrate . . . I just can't function right."  (AR at 674-75.)  He testified that the last time he saw his doctor regarding depression, "she increased my dosage of Cymbalta because I was having [] crying spells.  All of a sudden for no reason I would start crying from how depressed I am."  (AR at 675.) Plaintiff stated that "I just start crying for no reason and I don't want to go anywhere, I don't want to do anything, nothing cheers me up."  (AR at 675.)

The crux of the ALJ's rejection of Plaintiff's claims of mental impairments and disabling pain was the ALJ's reliance on Plaintiff's daily activities.  The ALJ noted that Plaintiff was the primary caretaker for his son, and the ALJ asserted that Plaintiff "had earlier stated that he no longer wished to work but wanted to stay home and care for any children born to him and his wife."  (AR at 23.)  The ALJ then

---

[5]  Methadone is a synthetic and addictive narcotic drug used for the relief of pain and a substitute narcotic in the treatment of heroin addiction.  *See* Merriam-Webster's Online Medical Dictionary at http://www2.merriam-webster.com/cgi-bin/mwmedsamp (as viewed on March 14, 2008). Cymbalta, aka duloxetine, is an antidepressant, and is also used to treat pain caused by complications due to diabetes.  *See* online http://www.bing.com/ health/article (as viewed on March 14, 2008) (hereinafter "Bing medicine online site"). Lorazepam is a denzodiazepine used to treat anxiety.  (*See* Bing medicine online site).  Cogentin, aka benztropine, is for certain "movement problems" that may be caused by other medicines or other causes. *See id.*  Fluphenazine helps to treat disordered thoughts and some other emotional, nervous, and mental problems.  *See id.*

17

stated that Plaintiff was able to perform as his son's caretaker "without significant difficulty, and this is consistent with the estimates of global assessment of functioning, GAF, which indicate moderate functional restrictions." (AR at 23.) The ALJ stated that Plaintiff's "recent medical records show a decrease in both his mental symptoms and his symptoms of pain." (AR at 23 [citing AR at 438].) The ALJ stated that he gave Dr. Glassmire's opinions significant weight as to Plaintiff's mental impairments "since that opinion is not inconsistent with the treatment records or contradicted by a treating provider's assessment," and because it was not "inconsistent with [Plaintiff's] activities of daily living and his ability to maintain concentration and focus on his primary care duties." (AR at 24.) The ALJ stated that "[t]he [Plaintiff's] primary difficulties would be in his social interactions and ability to perform complex tasks." (AR at 23.)

This Court's review of the record reveals that there are several issues regarding the combined effect of Plaintiff's mental impairments and other limitations, and the transferability of Plaintiff's daily activities to the work setting, which the ALJ either did not address or did not adequately resolve.

First, the record reflects that Plaintiff receives help from his relatives in caring for his son. (*See, e.g.,* AR at 332.) Obviously, relatives will not be able to help Plaintiff in a work setting.

Plaintiff also reports numerous conditions which hamper his abilities at home. Notable among these is Plaintiff's OCD, which Plaintiff has reported to several treating mental health professionals, and which Plaintiff has stated causes him to "get[] very obsessive and clean[] baby's bottles multiple times and tr[y] to keep everything

extremely clean," and causes him to "obsess[] and worr[y] excessively about the baby" and "keep[] checking on [the baby]," in addition to his problems with checking doors and windows and counting letters in words. (*See* AR at 332, 336.)  While Plaintiff's OCD may actually help him care for his son in some respects, that same severe impairment could be a liability in the work setting.

The ALJ's statement that Plaintiff's GAF scores show only "moderate functional restrictions" is also contradicted by the record.[6]  The record contains numerous GAF scores for Plaintiff, showing, *inter alia*, a GAF score of 41-51 on January 16, 2006 (AR at 413); a GAF of 51-60 on January 24, 2006 (AR at 409); a GAF of 41-50 on February 27, 2007 (AR at 335); and GAF scores of 51-60 on September 11, 2007 and December 6, 2007.[7]  (AR at 50, 463.)  Support for Plaintiff's GAF scores of 41-50 are evidenced by Plaintiff's obsessional rituals, which appear to be continuing in spite of the numerous medications which Plaintiff takes for his psychiatric symptoms.

Likewise, the ALJ accepted Dr. Glassmire's opinions that Plaintiff has a severe schizophrenic impairment and a depressive disorder, but the

_____

[6]  The Diagnostic and Statistical Manual of Mental Disorders organizes each psychiatric diagnosis into five levels relating to different aspects of the disorder or disability.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 27-33 (4th ed., text rev., 2000) (the "DSM-IV-TR").  Axis V is the Global Assessment of Functioning (the "GAF").  The GAF reports the clinician's judgment of the individual's overall functioning.  *Id.* at 32-33.

[7]  A GAF of 51-60 indicates moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers).  A GAF of 41-50 indicates serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).  *See Holzberg v. Astrue*, — F. Supp. 2d —, 2010 WL 128391 (W.D. Wash. 2010) (citations omitted).

ALJ did not assess how Plaintiff's hallucinations or depressive episodes would impact Plaintiff's job abilities.   The record reflects that Plaintiff has had multiple episodes of decompensation due to schizophrenia and depression (*see, e.g.,* AR at 674-75), including feelings that he is being following by "the devil" and crying for no reason, and yet the ALJ did not discuss how decompensation due to schizophrenia or depression might affect Plaintiff's ability to work.[8]

The ALJ does also not adequately discredit Plaintiff's claims that sitting is very painful for him and that he cannot sit still and needs to move around constantly, complaints which Plaintiff made to numerous health care providers (*see, e.g.,* AR at 123 [neurosurgical exam by Dr. Serge Obukhov].)   Such a need for constant movement would not be inconsistent with Plaintiff's ability to care for his son at home; but such movement needs could impact Plaintiff's ability to maintain focus, concentration, persistence, or pace in the work setting.

Lastly, the records are replete with lists of the medications that Plaintiff was taking at any one time for the relief of pain and for psychiatric symptoms.   Most recently, Plaintiff reports that he is now taking Methadone for pain because Vicodin and Darvocet were ineffective. (*See* AR at 679-80.)   Plaintiff states that Methadone is also ineffective, but he takes it because he follows his doctor's orders. (AR at 670.)   The record reflects that at least one doctor has instructed Plaintiff to take Methadone 2 to 3 times a day as needed for pain.   (*See* AR at 541-43.) Contrary to the ALJ's findings, the record reflects that Plaintiff's medications and his insulin dosages have been

---

[8]   Episodes of decompensation are exacerbations of or temporary increases in symptoms or signs, accompanied by a loss of adaptive functioning.   20 C.F.R. Part 404, Subpt. P., App. 1, § 12:00(c)(4).

re-adjusted numerous times over the past few years in an effort to manage Plaintiff's various symptoms. (*See, e.g.,* AR at 427.) The ALJ does not explicitly consider how side effects from Plaintiff's medications, such as dizziness, would combine with Plaintiff's other impairments to affect Plaintiff's ability to work. Plaintiff also describes how he must monitor his blood sugar level 3 to 4 times a day and adjust it as necessary. (AR at 676-78.) The ALJ characterizes Plaintiff's diabetes as "stable on medication," but the ALJ does not discuss what effect Plaintiff's need to make time to monitor and adjust his insulin levels during work, or to take other medications during work for headaches or psychiatric problems, might have on Plaintiff's ability to work.

To the extent that the ALJ's assessment of Plaintiff's combined mental impairments and other non-exertional impairments relies on Dr. Glassmire's opinions, it is clear that the non-examining psychologist's findings are not consistent with the independent evidence in the record. As such, Dr. Glassmire's opinions do not constitute substantial evidence. *See Lester*, 81 F.3d at 831. Furthermore, since the ALJ's assessment of Plaintiff's RFC did not adequately account for the combined effect of all of Plaintiff's limitations, including mental impairments and Plaintiff's pain, on Plaintiff's ability to work, the ALJ's RFC assessment is defective. *See Valentine*, 574 F.3d at 690.

**IV.   Conclusion**

The final issue to be resolved is whether, since the ALJ's opinion is not supported by substantial evidence, the case should be remanded for further proceedings or for an award of benefits. In general, the choice whether to reverse and remand for further administrative

proceedings, or to reverse and simply award benefits, is within the discretion of the Court. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion)). "[T]he decision whether to remand for further proceedings turns upon the likely utility of such proceedings." *Id.* at 1179; *see Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.2004) (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful"). Here, enhancement of the record would be useful, particularly as to the combined effects of Plaintiff's mental and other impairments and subjective complaints of pain. As noted in the Social Security regulations, "major limitations in [the areas of concentration, persistence, or pace] can often be assessed through clinical examination or psychological testing." 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12:00(C)(3).[9] Accordingly, it is ordered that the decision of the Commissioner be reversed and the matter be remanded for proceedings consistent with this Order.

Dated:  March 18, 2010

_____
Marc L. Goldman
United States Magistrate Judge

---

[9]  Because the record is not sufficiently developed to support a determination of disability without further proceedings, the Court will not decide whether the remaining issues raised by Plaintiff, including issues regarding the VE's testimony, would independently require reversal. *See Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

22